UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-334-RJC

| | |
|---|---|
| SHARON PEARSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| CHARLOTTE-MECKLENBURG ) | |
| BOARD OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Defendant Charlotte-Mecklenburg Board of Education's (Board) Motion for Summary Judgment and Memorandum in Support. (Doc. Nos. 33, 34). Plaintiff Sharon Pearson (Plaintiff), appearing pro se, did not file a response to the motion.

I.  **BACKGROUND**

The Board first hired Plaintiff in October 2005 as a part time school associate. (Doc. No. 33-1 at ¶5). Plaintiff transferred the following year to a full time position at the Berry Academy of Technology (Berry), where she worked with students with significant disabilities. (Doc. No. 34-1 at 4-5). As part of her work duties, Plaintiff offered physical assistance, including, if necessary, lifting students and supporting their body weight. (Doc. No. 33-1 at ¶26).

Prior to the 2008-09 school year, Plaintiff's position was eliminated at Berry, and she was transferred to Garinger Proper High School (Garinger), where she continued to work with developmentally disabled students. (Id. at ¶¶9-13). All of the positions held by Plaintiff were "at will" positions, and did not include grants for status or tenure. (Id. at ¶7). Although the job

duties were similar, specifically offering hygienic and toileting assistance to students, the physical demands were greater due to the increased age of the students. (Id. at ¶26). Both the Berry and Garginger position required Plaintiff to lift more than ten pounds on regular occasions. (Id.; Doc. No. 34-1 at 4-5). Following the transfer to Garinger, Plaintiff contacted the Human Resources Department to request a transfer due to a Sickle Cell Disease, a medical condition that she had not previously revealed to Defendant. (Doc. No. 33-1 at ¶22). In response to an inquiry, Plaintiff disclosed the medical condition and requested several accommodations, including: no lifting more than ten pounds; work breaks every half hour as needed; no contact with bodily fluid without protective equipment such as masks, gloves and gown; and a water bottle during work to maintain hydration. (Id. at ¶24). Based on these limitations, Plaintiff could no longer perform the essential duties of her position.

In order to accommodate Plaintiff, staff from the Employee Relations Department informed Plaintiff's supervisor that another employee would need to perform Plaintiff's job duties as she could no longer do so. (Id. at ¶ 31). Additionally, the Board placed another teacher assistant in the classroom to perform those functions that Plaintiff could no longer personally carry out. (Id.). Finally, the Employee Relations Department referred Plaintiff to the Human Resources Managers who were tasked with filling vacancies at their schools. When making these referrals, the staff for the Employee Relations Department did not inform the principals of the Plaintiff's disability. (Id. at ¶¶32-33). Ultimately, Plaintiff was not selected for any other position, but remained at Garinger. (Id. at ¶34).

In March 2009, it was announced that Garinger was scheduled to be closed. (Id. at ¶9). Additionally, the Board became aware of a budget deficit and enacted a system-wide reduction

in force. (Id. at ¶8). Based on the reduction in force, it was determined that teacher assistants at Garinger would not automatically receive transfers into positions with other schools. (Id. at ¶¶9-15). Instead, teacher assistants would have to interview for open positions and be selected by a school principal. (Id. at ¶16; Doc. No. 33-2 at ¶ 13).

The Plaintiff was among twelve teacher assistants at Garinger whose positions were eliminated in the reduction. While the Board assisted the effected teacher assistants in obtaining interviews, the ultimate decision whether to hire or not remained with the principal of the school. During the spring and summer of 2009, the Plaintiff received several interviews and received at least one job offer, which she turned down because it involved assisting students with toileting needs. (Doc. No. 33-1 at ¶36). At some point during the summer, Plaintiff stopped interviewing for positions within the school district.

During the 2009-10 school-year, Plaintiff worked in a part time position until March 2010 when she voluntarily left the Board's employment. The part time position paid a higher hourly wage than Plaintiff had earlier received but only required twenty-four hours of work per week. (Id. at 35).

Plaintiff filed a charge of discrimination with the EEOC on November 23, 2009 alleging discrimination on the basis of disability. (Doc. No. 17-1 at 3). Plaintiff received a Right to Sue letter on March 1, 2012. (Doc. No. 27-1). She filed the instant suit on May 29, 2012. (Doc. No. 1: Complaint).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show

3

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. <u>See</u> <u>id.</u>

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248. Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985).

## III. DISCUSSION

Defendant contends that Plaintiff's claims are both outside the scope of her EEOC charge and are time-barred by the Statute of Limitations. In a suit for unlawful employment practices, a federal court may only consider those allegations included in the EEOC charge of discrimination. <u>Evans v. Technologies & Applications & Serv. Co.</u>, 80 F.3d 954, 962-63 (4th Cir. 1996). Here, Plaintiff's charge of discrimination is limited to the Board's denial of her re-employment. A plaintiff may proceed to file an employment discrimination claim in federal court only after a

charge has been filed with the EEOC.  See e.g., 42 U.S.C. § 2000e-5(f)(1).  Failure to exhaust administrative remedies by filing an EEOC charge serves to deprive the federal courts of subject matter jurisdiction over such claims.  Jones v. Calvert Group, LTD., 551 F.3d 297, 300 (4th Cir. 2009).  Nonetheless, as most EEOC charges are filed without the assistance of counsel, courts should construe them liberally.  Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005).

Even under the most generous construction, there is no evidence that the Plaintiff communicated any facts to the EEOC from which one could infer that claims for hostile work environment or harassment might be reasonably related.  Lacking the subject matter jurisdiction to inquire into Plaintiff's claims for hostile work environment and harassment, this Court limits its inquiry into the facts related to the denial of employment to determine whether they constitute a violation of the Americans with Disabilities Act (ADA).  See 42 U.S.C. § 12132.

    1.    Plaintiff's Prima Facie Case

Plaintiff has not brought evidence of direct discrimination and so her claims are evaluated under the pretext framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  To establish a prima facie case of discrimination, Plaintiff must demonstrate that: (1) she is within the ADA's protected class; (2) she was otherwise qualified for the position; and (3) her disability was a motivating factor in the employer's decision not to hire her.  Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995).  If Plaintiff establishes a prima facie case, the burden shifts to the Board to provide a legitimate, non-discriminatory reason for its action.  If the Board is able to so demonstrate, the Plaintiff must show by a preponderance of the evidence that the Board's reasons were merely a pretext for discrimination.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-48 (2000).

In the immediate instance, the alleged discrimination consists of the Board's failure to re-hire Plaintiff following the reduction in force. Plaintiff establishes the first two prongs: Sickle Cell is a condition covered by the ADA, and her performance evaluations demonstrate that she was meeting her employer's expectations. Plaintiff's prima facie case fails, however, for lack of evidence suggesting that the Board considered her condition in deciding not to offer her full time employment. Plaintiff's evidence suggesting improper motivation on the part of the Board is limited to the allegations stated in her complaint. She does not provide any evidence that the Board considered her illness or sought to limit her opportunities for employment. Accordingly, Plaintiff cannot establish the third prong of her prima facie case.

In contrast, the Board provided evidence that both the Human Resources Departments and Employee Relations Departments made efforts to accommodate Plaintiff and to ensure that she was given full consideration for the job openings. (Doc. No. 33-2 at ¶14). Critically, the Board provided evidence that Plaintiff was offered a job at Morehead Elementary School but had to turn it down because it involved assisting students with toileting needs. (Doc. No. 33-1, ¶¶ 35-36). Such evidence demonstrates that the Board declined to share information regarding the plaintiff's condition to the principals so that it would not serve as factor influencing their decisions when considering her suitability for various jobs. Finally, Plaintiff was eventually offered a position by the Board, albeit one that was limited to twenty-four hours of work per week. (Id. at 6). Eventually, Plaintiff made the decision to leave her job at the school. (Id. at 6-7).

It is the Plaintiff's burden to provide evidence to make a prima facie showing of discrimination. Among the things Plaintiff must demonstrate is that her disability was a

motivating factor in Defendant's decision not to hire her. Here, Plaintiff has failed to provide any evidence on this issue. Defendant, in contrast, has provided considerable evidence to demonstrate the absence of such improper motive. Viewing the sum of the evidence presented, it is clear that no reasonably jury could return a verdict for Plaintiff in this case.

For these reasons, the Court GRANTS Defendant's Motion for Summary Judgment and DISMISSES the instant suit.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 33), is **GRANTED**; and

2. The Clerk of Court is directed to close this case.

Signed: August 19, 2013

Robert J. Conrad, Jr.
United States District Judge